**Fred N. ACKER, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 13320.**

United States Court of Appeals Sixth Circuit.

June 18, 1958.

Rehearing Denied Sept. 3, 1958.

Fred N. Acker, in pro. per.

Helen A. Buckley, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Joseph F. Goetten, Lee A. Jackson, Robert N. Anderson, Charles B. E. Freeman, Dept. of Justice, Washington, D. C., on brief, for respondent.

Before SIMONS, Chief Judge, MILLER, Circuit Judge, and MATHES, District Judge.

MATHES, District Judge.

The Tax Court sustained *in toto* respondent's determinations of deficiencies in petitioner's income tax and additions thereto under Int.Rev.Code of 1939 §§ 291(a), 294(d) (1) (A), and 294(d) (2), 26 U.S.C.A. §§ 291(a), 294(d) (1) (A), (2) for the years 1947–1950 inclusive.

Petitioner does not question here the correctness of the additions to tax under § 291(a), but challenges the validity of all the deficiency determinations and additions to tax under §§ 294(d) (1) (A) and 294(d) (2) for each of the years involved.

The facts, as set out in the Tax Court's Memorandum Findings of Fact and Opinion [16 CCH Tax Ct. Memo. 89 (1957)], are not in controversy. Petitioner is an attorney and a resident of Ohio. During the relevant period petitioner was a stockholder, in some instances the sole stockholder, in several corporations. All but one of the deficiency determinations in issue upon this review concern activities of petitioner with respect to one or more of those corporations.

Petitioner not only disputes the correctness of the Tax Court's application of the Code sections involved; he also attacks the constitutionality in general of the income tax provisions of the Internal Revenue Code of 1939, and the constitutionality in particular of the requirement that a declaration of estimated tax be filed.

Inasmuch as the constitutional issues need not be reached if, as petitioner contends, the Tax Court incorrectly interpreted and applied the pertinent sections of the Internal Revenue Code of 1939, we turn first to the statutory questions. [See: Rescue Army v. Municipal Court, 1947, 331 U.S. 549, 568–575, 67 S.Ct. 1409, 91 L.Ed. 1666; Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 341, 345–348, 56 S.Ct. 466, 80 L.Ed.

688 (concurring opinion of Mr. Justice Brandeis).]

■ In 1947, 1948, and 1949, petitioner personally paid real estate taxes on Ohio property owned by a corporation which in turn was wholly owned by him. Petitioner admits that title was kept in the corporation solely for his own convenience, that the property taxes were assessed against the corporation, and that within the period in question the corporation transacted business by selling some of the property. The Tax Court was clearly correct in sustaining respondent's determination that under the circumstances the property taxes were not deductible by petitioner. Int.Rev. Code of 1939, § 23(c) (1), 26 U.S.C.A. § 23(c) (1); Treasury Regulation 111 § 29.23(c)–1, 26 C.F.R. (1949); Moline Properties, Inc., v. Commissioner, 1943, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; Magruder v. Supplee, 1942, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555; Gilken Corp. v. Commissioner, 6 Cir., 1949, 176 F.2d 141; Brudno v. Commissioner, 6 Cir., 1943, 138 F.2d 779; and see Simon J. Murphy Co. v. Commissioner, 6 Cir., 1956, 231 F.2d 639.

■ In 1950 petitioner was convicted and imprisoned for willful failure to file an income tax return for 1946. In his unsuccessful defense of this criminal prosecution petitioner expended $2,290 for legal expenses and bond costs which he urges are deductible, apparently under Int.Rev.Code of 1939, § 23(a), on the theory that defending against criminal charges is "an absolute necessity" for an attorney and that his fight in the criminal case greatly enhanced his reputation. The Tax Court properly sustained respondent's disallowance of this deduction. "A taxpayer who has been prosecuted under a federal or state statute and convicted of a crime has not been permitted a tax deduction for his attorney's fee." Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 473, 64 S.Ct. 249, 253, 88 L.Ed. 171, note 8; Estate of Albert E. MacCrowe, 14 CCH Tax Ct. Memo. 958 (1955), affirmed, on this point and reversed on oth-

er grounds, MacCrowe's Estate v. C. I. R., 4 Cir., 1956, 240 F.2d 841; see: Tank Truck Rentals, Inc., v. Commissioner, 1958, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed. 2d 562; Hoover Motor Express Co. v. United States, 1958, 356 U.S. 38, 78 S.Ct. 511, 2 L.Ed.2d 568.

■ In 1947 petitioner loaned $8,500 to a corporation in which he owned stock, and the loan became worthless during that year. In 1948 petitioner was required to pay a note which he had guaranteed for another corporation in which he owned stock, resulting in a $3,465.49 loss to him. Respondent determined that both of these losses were deductible only as non-business bad debts, required to be treated as short term capital losses [Int. Rev.Code of 1939, § 23(k) (4)], and so subject to the amount limitation specified in § 117(d) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(d) (2). The Tax Court found that petitioner failed to show that he was in the business of lending money to or guaranteeing the loans of corporations, and so sustained respondent's determinations. We agree. [Treasury Regulation 111 § 29.-23(k)–6, 26 C.F.R. (1949); Putnam v. Commissioner, 1956, 352 U.S. 82, 92–93, 77 S.Ct. 175, 1 L.Ed.2d 144; Wheeler v. Commissioner, 2 Cir., 1957, 241 F.2d 883; Commissioner of Internal Revenue v. Schaefer, 2 Cir., 1957, 240 F.2d 381; and see McNeill v. Commissioner, 4 Cir., 1958, 251 F.2d 863, 866–867.]

For the years 1947 through 1950 respondent imposed on petitioner and the Tax Court sustained additions to tax both under § 294(d) (1) (A) for failure to file a declaration of estimated tax, and under § 294(d) (2) for substantial underestimation of estimated tax. Petitioner does not rely on the statutory excuse of "reasonable cause and not * * * willful neglect" to justify his failure to file the declarations. Rather, he maintains that the statutory provisions requiring the filing of a declaration of estimated tax are unconstitutional because "the enumerated powers of the Congress do not include any power to compel a citizen to prophesy. It is be-

yond any human ability and therefore not a subject for Congressional intervention."

■■ Since petitioner makes no attempt to establish the statutory excuse, the Tax Court correctly applied the statute in sustaining imposition of the additions to tax under § 294(d) (1) (A) for failure to file the declarations of estimated tax. And we hold with the Tax Court that petitioner's attack upon the constitutionality of the provisions of the Internal Revenue Code of 1939 requiring the filing of a declaration of estimated tax, and imposing penalties for failure to file, is "wholly without merit." Such requirements are a valid exercise of the taxing power conferred by Article 1, § 8, and the Sixteenth Amendment of the Constitution. Erwin v. Granquist, 9 Cir., 1958, 253 F.2d 26; Walker v. United States, 5 Cir., 240 F.2d 601, certiorari denied, 1957, 354 U.S. 939, 77 S.Ct. 1402, 1 L.Ed.2d 1538.

■ Petitioner next contends that imposition of concurrent penalties under §§ 294(d) (1) (A) and 294(d) (2) of the 1939 Code is without statutory warrant. The Tax Court held that petitioner's failure to file any estimate at all amounted to a zero estimate which, in turn, resulted in a substantial underestimate within the purview of § 294(d) (2). This holding is in accord with Treasury Regulation 111 § 29.294–1(b) (3) (i) [26 C.F.R. (1949)], and is supported by a long line of Tax Court decisions [see, among others: Clarence F. Buckley, 1957, 29 T.C.No. 50; Marcel Garsaud, 1957, 28 T.C. 1086, 1090; Harold C. Marbut, 1957, 28 T.C. 687, 692; J. D. Abbott, 1957, 28 T.C. 795, 808–809; Anthony Delsanter, 1957, 28 T.C. 845, 861–862; Walter H. Kaltreider, 1957, 28 T.C. 121; Marvin Maxey, 1956, 26 T.C. 992, 996; Harry Hartley, 23 T.C. 353, 360, modified 1954, 23 T.C. 564; G. E. Fuller, 1953, 20 T.C. 308, 316, affirmed, on other grounds, 10 Cir., 1954, 213 F.2d 102], and by some District Court decisions [Palmisano v. United States, D.C.E.D.La. 1958, 159 F.Supp. 98; Farrow v. United States, D.C.S.D.Cal.1957, 150 F.Supp.

581; Peterson v. United States, D.C.S.D. Tex.1956, 141 F.Supp. 382].

■ While this court has affirmed three Tax Court decisions which have sanctioned imposition of penalties under both § 294(d) (1) (A) and § 294(d) (2) where no declaration of estimated tax had been filed, examination of the briefs and appendices in these cases discloses that the propriety of imposing the penalty for substantial underestimation where no estimate at all had been filed was not raised in this court. [John Federika, 14 CCH Tax Ct. Memo. 652, 658 (1955), affirmed, per curiam, 6 Cir., 1956, 237 F.2d 916, certiorari denied, 1957, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed. 2d 596; Robert Fogel, 14 CCH Tax Ct. Memo. 718, 728 (1955), affirmed, per curiam, 6 Cir., 1956, 237 F.2d 918; R. M. Clayton, 15 CCH Tax Ct. Memo. 105, 109 (1956), affirmed, per curiam, 6 Cir., 1957, 245 F.2d 238.] The question remains open for examination then as *res integra* here.

Even though this problem of concurrent penalties exists only under the 1939 Code, and cannot arise under the 1954 Code which expressly provides but a single penalty for underpayment of estimated tax [Int.Rev.Code of 1954, §§ 6651(c), 6654, 26 U.S.C.A. §§ 6651(c), 6654, and see 3 U.S.Code Cong. & Adm.News (1954), pp. 4544, 4567, 5241–5242], the problem remains an important one because of cases yet to be decided which will be ruled by the 1939 Code [see Int. Rev.Code of 1954, § 6654(h)].

The argument in support of the validity of that part of Treasury Regulation 111 § 29.294–1(b) (3) (i) [26 C.F.R. (1949)] declaring that "[i]n the event of a failure to file the required declaration, the amount of the estimated tax for the purposes of this provision is zero," has been well stated in Palmisano v. United States, supra, D.C., 159 F.Supp. 98, 99, Peterson v. United States, supra, 141 F.Supp. 382, and Farrow v. United States, supra, D.C., 150 F.Supp. 581, 582. [See also G. E. Fuller, supra, 20 T.C. at page 316.]

But to give effect to the quoted regulation presents a problem even greater than the logical difficulty encountered in saying that one who has filed no estimate at all has thereby underestimated his tax. [See Barnwell v. United States, 58–1 U.S.T.C. Par. 9374 (E.D.S.C.Feb. 4, 1958).] For although the Congress treated failure to file a declaration of estimated tax and substantial underestimation of tax as separate and distinct acts under the 1939 Code, and provided separate and different penalties for each, the regulation renders a taxpayer who has failed to file a declaration ipso facto subject to both the penalty for failure to file and the penalty for substantial underestimation. As the Tax Court itself observed in rebuffing another attempt of respondent to extend these penalties by implication: "If the legislature had intended such a result it would have been a simple matter so to provide." [Anthony Delsanter, supra, 28 T.C. at page 862.]

■ Moreover, inasmuch as the regulation imposes a penalty in addition to one expressly imposed by the statute itself for the same omission, we are unable to perceive wherein the regulation is necessary to effectuate the statutory taxing scheme. Section 294(d) of the Internal Revenue Code of 1939 is penal in nature and to be strictly construed. [Stephan v. Commissioner, 5 Cir., 1952, 197 F.2d 712; Barnwell v. United States, supra, 58–1 U.S.T.C. Par. 9374; Davis v. Dudley, D.C.W.D.Pa.1954, 124 F.Supp. 426, 429; see F. C. C. v. American Broadcasting Co., 1954, 347 U.S. 284, 296, 74 S.Ct. 593, 98 L.Ed. 699.] "Penalties are never extended by implication" [Elliott v. Railroad Co., 1878, 99 U.S. 573, 576, 25 L.Ed. 292; United States v. J. H. Winchester & Co., 2 Cir., 1930, 40 F.2d 472], and "all questions in doubt must be resolved in favor of those from whom the penalty is sought." [Hatfried, Inc., v. Commissioner, 3 Cir., 1947, 162 F.2d 628, 633.]

Furthermore, even if the exactions involved be treated as "additions to Tax," as they are denominated by § 294 of the 1939 Code, the regulation runs counter to the long established rule that "statutes levying taxes * * * are not to be extended by implication beyond the clear import of the language used." [United States v. Merriam, 1923, 263 U.S. 179, 187–188, 44 S.Ct. 69, 71, 68 L.Ed. 240; Crooks v. Harrelson, 1930, 282 U.S. 55, 61, 51 S.Ct. 49, 75 L.Ed. 156; Reinecke v. Gardner, 1928, 277 U.S. 239, 244, 48 S.Ct. 472, 72 L.Ed. 866; Gould v. Gould, 1917, 245 U.S. 151, 153, 38 S.Ct. 53, 62, L.Ed. 211; cf. Parker Pen Co. v. O'Day, 7 Cir., 1956, 234 F.2d 607, 609.]

■ Mindful of the cogent reasoning of the Tax Court and District Court opinions sustaining the regulation, we nevertheless are of opinion that Treasury Regulation 111 § 29.294–1(b) (3) (i) [26 C.F.R. (1949)] is invalid insofar as it provides that "[i]n the event of a failure to file the required declaration, the amount of the estimated tax for the purposes of this provision is zero." In so holding we are mindful too that, as the Tax Court and the District Courts have pointed out, Treasury regulations are presumptively valid. But we think that in this instance considerations of reason and policy involved in construing statutes levying taxes and imposing penalties outweigh the presumption of validity; that the quoted provision of the regulation is, in other words, "unreasonable and plainly inconsistent with the revenue [statute]," and so cannot be sustained. [Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831.]

This conclusion is buttressed by the fact that it is in accord with that reached by the majority of the District Courts which have considered the problem. [Barnwell v. United States, supra, 58–1 U.S.T.C. Par. 9374; Erwin v. Granquist, 57–2 U.S.T.C. Par. 9732 (D.Ore.1957), affirmed, 9 Cir., 1958, 253 F.2d 26; Powell v. Granquist, D.C.D.Ore.1956, 146 F. Supp. 308, 312, affirmed, 9 Cir., 1958, 252 F.2d 56; Jones v. Wood, D.C.Ariz.1956, 151 F.Supp. 678; Stenzel v. United States, D.C.N.D.Cal.1957, 150 F.Supp. 364; Hodgkinson v. United States, 57–1

U.S.T.C. Par. 9294 (S.D.Cal.1956); Owen v. United States, D.C.D.Neb.1955, 134 F.Supp. 31, 39, modified on another point sub nom. Knop v. United States, 8 Cir., 1956, 234 F.2d 760; Todd v. United States, 57–2 U.S.T.C. Par. 9768 (N.D.Ga. 1957); Glass v. Dunn, 56–2 U.S.T.C. Par. 9840 (N.D.Ga.1956); United States v. Ridley, D.C.N.D.Ga.1954, 127 F.Supp. 3, 11; United States v. Ridley, D.C.N.D. Ga.1954, 120 F.Supp. 530, 538.]

The judgment of the Tax Court must therefore be reversed as to the additions to tax under § 294(d) (2). However, our conclusion that the claimed deductions were properly disallowed compels us nonetheless to reach the constitutional issues raised as to the income tax provisions of the Internal Revenue Code of 1939.

Petitioner asserts that these income tax provisions are unconstitutional because: (1) the rates are so high as to make the levy not a tax but a confiscation of property contrary to the Fifth Amendment to the Constitution, (2) the progressive rates are unconstitutional, and (3) the "income tax law considered as a whole in its excessive rates and arbitrary provisions is openly subversive of the fundamental philosophy of the Constitution of the United States and repugnant to its continued existence."

▌ The Tax Court summarily disposed of these constitutional issues with the statement: "It has long been recognized that where a taxing statute is within the power of Congress to enact, as clearly the Internal Revenue Code is, the fact that the rates provided thereunder may be excessive, confiscatory, or destructive does not invalidate the taxing act." [16 CCH Tax Ct. Memo. at 91.]

This declaration by the Tax Court completely overlooks petitioner's arguments by assuming the very thing that he disputes, namely, whether the Congress has the power to enact an income tax law like that found in the Internal Revenue Code of 1939.

While holding that the courts may not disturb the judgment of the Congress because of indirect effects of a statute that clearly represents an exercise of the taxing power [see, for example, McCray v. United States, 1904, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78], on more than one occasion the Supreme Court has adverted to the possibility that a law, although denominated a taxing statute, might not be a taxing statute at all, but one which on its face has crossed the boundary from the classification "tax" to the classification "taking," so as to become subject to the limitations of the Fifth Amendment to the Constitution. [Steward Machine Co. v. Davis, 1937, 301 U.S. 548, 585, 57 S.Ct. 883, 81 L.Ed. 1279; Brushaber v. Union Pacific R., 1916, 240 U.S. 1, 24, 36 S.Ct. 236, 60 L.Ed. 493.]

We know of no authority holding that the Congress may constitutionally enact a law which, although called a tax statute, on its face amounts to a taking of private property without compensation therefor. That such a law would fall within the area of "taking," rather than the area of "taxing," and so be subject to judicial nullification because of the limitations of the Fifth Amendment was clearly recognized by Mr. Chief Justice White speaking for the Court in Brushaber v. Union Pacific R., supra, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, where he pointed out that, despite the breadth of the taxing power conferred by the Constitution, there might arise "a case where, although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment; or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion." [240 U.S. at pages 24–25, 36 S. Ct. at page 244.]

This principle was also recognized by Mr. Justice Cardozo speaking for the Court in Steward Machine Co. v. Davis, supra, 301 U.S. 548, 57 S.Ct. 883, 81 L. Ed. 1279, when he wrote: "[W]e assume

that discrimination, if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment." [301 U.S. at page 585, 57 S.Ct. at page 890.] Nor do we forget the ringing words of Mr. Justice Holmes when, in dissent, he declared: "The power to tax is not the power to destroy while this Court sits." [Panhandle Oil Co. v. State of Mississippi ex rel. Knox, 1928, 277 U.S. 218, 223, 48 S.Ct. 451, 453, 72 L.Ed. 857.]

Since the Tax Court applied an incorrect legal standard in judging petitioner's claim of unconstitutionality, it would be proper to remand the case to enable that court to weigh the evidence in light of correct legal standards. However, on surveying the entire record from which it appears that petitioner fully presented to the Tax Court both his constitutional arguments and his evidence supporting them, we think there is no reasonable basis in fact or law for a holding that the income tax provisions of the Internal Revenue Code of 1939 are unconstitutional either on their face or as applied to petitioner in this case.

The 1939 Code is unquestionably a taxing statute in substance as well as in name. The constitutionality of progressive tax rates is long settled. [Knowlton v. Moore, 1900, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Brushaber v. Union Pacific R., supra, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493.] The classifications drawn in question here do not appear to be either arbitrary or unreasonable in any constitutional sense. To the contrary, in large part they represent "the record of the government's endeavor to keep pace with the fertility of invention whereby taxpayers had contrived to keep the larger benefits of ownership and be relieved of the attendant burdens." [Burnet v. Wells, 1933, 289 U.S. 670, 676, 53 S.Ct. 761, 763, 77 L.Ed. 1439.]

Nor can we say that the rates of tax, admittedly high, have reached confiscation or a "taking" in the constitutional sense. All in all, much as we may as men sympathize with petitioner's arguments about our tax plight, as judges we must

say that he has addressed them to the wrong forum; they are for the Congress, and not for the courts.

For the reasons stated, the judgment of the Tax Court is reversed insofar as it sustains the additions to tax under § 294(d)(2) of the Internal Revenue Code of 1939. In all other respects, the judgment is affirmed.

On Petition for Rehearing

PER CURIAM.

Each party has petitioned for a rehearing. Petitioner but restates a portion of his earlier argument.

Respondent, however, now advances the contention that "the Treasury Regulation in question could hardly be inconsistent with the statute * * * because the language of the Treasury Regulation is almost identical to the language used by Congress in the Committee Reports dealing with the statute." [Compare Treasury Regulation 111 § 29,294-1(b) (3)(i), 26 C.F.R. (1949) with S.Rep. No. 221, 78th Cong., 1st Sess. 42 (1943 Cum.Bull. 1314, 1345), and H.R.Rep. No. 510, 78th Cong., 1st Sess. 56 (1943 Cum. Bull. 1351, 1372).]

Respondent also calls to our attention the recent decisions of Patchen v. Commissioner, 5 Cir., 1958, 258 F.2d 544, Abbott v. Commissioner, 3 Cir., 1958, 258 F.2d 537, and Hansen v. Commissioner, 9 Cir., 1958, 258 F.2d 585. These decisions, rendered subsequent to the publication of our opinion in this case, express disagreement with our holding that the penalty for failure to file a declaration of estimated tax [Int.Rev. Code of 1939 § 294(d)(1)(A), 26 U.S. C.A. § 294(d)(1)(A)] and the penalty for substantial underestimation of estimated tax [id. § 294(d)(2)] cannot be imposed concurrently so as to work the exaction of a double penalty.

In the Patchen case the learned Court of Appeals for the Fifth Circuit appears to credit as authority decisions of this Court in which the problem was never raised. [See footnote 15 citing Fogel v. Commissioner, 6 Cir., 1956, 237 F.2d

918 and Clayton v. Commissioner, 6 Cir., 1957, 245 F.2d 238. See also 3 Roehner, Federal Taxation Par. 153 at page 191 (Aug. 8, 1958).]

In the Abbott case the learned Court of Appeals for the Third Circuit recognizes that: "An examination of the underestimation provisions of Section 294 (d) (2), taken alone, leaves unanswered the question of whether the penalty provided should be imposed where no declaration of estimated tax is filed." [Abbott v. Commissioner, supra, 258 F. 2d at page 543.] The Court then observed that "[t]he statute being ambiguous, resort to legislative history is proper in an endeavor to ascertain Congressional intent" [ibid.]; and concluded from the legislative history that the Congress intended the double penalty since "the regulation is precisely in accord with the Congressional intent expressed in the conference report." [Ibid.]

In the Hansen case the learned Court of Appeals for the Ninth Circuit likewise concluded from the legislative history that "[n]o other conclusion is possible but that Congress intended" to provide in the Act for the double penalty. [Hansen v. Commissioner, supra, 258 F.2d at page 591.]

■ However, it has long been our view that "[such an] intention of the Congress must be gathered from the language of the Act * * *." [United States v. Stroop, 6 Cir., 1940, 109 F.2d 891, 893; see also Hopkins v. Commissioner, 6 Cir., 1944, 144 F.2d 683, 692, 158 A.L.R. 1301.]

■ "Further", as the Court of Appeals for the Third Circuit has pointed out on another occasion, "it is well-settled that in the application of penalties 'all questions in doubt must be resolved in favor of those from whom the penalty is sought.'" [Hatfried, Inc., v. Commissioner, 3 Cir., 1947, 162 F.2d 628, 633.]

While our great respect for the learning and acumen of the Courts of Appeals for the Third, Fifth, and Ninth Circuits

naturally gives us pause, we are nonetheless of opinion that the challenged regulation authorizing imposition of double penalties cannot be validated by the fact that it is substantially a quotation from the Congressional committee reports.

■ It seems to us a policy of first order that taxpayers under this "government of laws and not of men" be entitled to expect that whenever the Congress intends to exact a penalty for a particular omission, this will be done by unequivocal language embodied in a statute regularly enacted conformably to the Constitution, and not by a committee report that is neither voted on by the members of both Houses nor submitted to the President for his approval. [U.S.Const. Art. I, §§ 7, 8, clause 1; Amend. XVI; see: Langstaff v. Lucas, D.C.W.D.Ky.1925, 9 F.2d 691, 692–693, affirmed upon the opinion of the District Court, 6 Cir., 13 F.2d 1022, certiorari denied, 1926, 273 U.S. 721, 47 S.Ct. 111, 71 L.Ed. 858; Masonite Corp. v. Fly, 5 Cir., 1952, 194 F.2d 257, 260; Helvering v. Rebsamen Motors, Inc., 8 Cir., 1942, 128 F.2d 584, 587–588.]

■ Especially is this so where, as in the case at bar, the penalty sought to be imposed by administrative regulation is cumulative with and in addition to another penalty clearly and expressly imposed by the statute for the identical omission. Such a regulation is an attempted expansion and extension of the statute tantamount to an amendment thereof, and neither "presumptions of validity" nor "reenactment doctrines" can serve to validate it. [United States v. Calamaro, 1957, 354 U.S. 351, 358–359, 77 S.Ct. 1138, 1 L.Ed.2d 1394; Koshland v. Helvering, 1936, 298 U.S. 441, 446–447, 56 S.Ct. 767, 80 L.Ed. 1268; Manhattan General Equipment Co. v. Commissioner, 1936, 297 U.S. 129, 134–135, 56 S.Ct. 397, 80 L.Ed. 528; Lincoln Elec. Co. Employees' Profit-Sharing Trust v. Commissioner, 6 Cir., 1951, 190 F.2d 326, 330; Langstaff v. Lucas, supra, 9 F.2d at pages 692–693; see United States v. Abrams, 6 Cir., 197

F.2d 805, certiorari denied, 1952, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664.]

 "The secretary of the treasury cannot by his regulations alter or amend a revenue law." [Morrill v. Jones, 1882, 106 U.S. 466, 467, 1 S.Ct. 423, 424, 27 L.Ed. 267.]

Each of the petitions for rehearing is denied.