EARL E. CLOUD AND MARJORIE B. CLOUD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cloud v. Commissioner
Docket No. 6866-70.
United States Tax Court
T.C. Memo 1974-131; 1974 Tax Ct. Memo LEXIS 189; 33 T.C.M. (CCH) 597; T.C.M. (RIA) 74131; May 22, 1974, Filed. Earl E. Cloud, pro se. Richard J. Neubauer, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $3,016.44 in petitioners' Federal income taxes for 1967. Petitioners have made certain concessions and the only issues remaining for our decision are whether petitioners are entiled to an "interest" deduction of $1,500 under section 163 of the Internal Revenue Code of 1954[1] and whether petitioners are entitled to a real property tax deduction of $3,739.20 [2] under section 164. *190 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Earl E. and Marjorie B. Cloud (petitioners) were residents of Huntsville, Alabama at the time the petition herein was filed. They filed a joint Federal income tax return for the calendar year 1967 with the Southeast Service Center at Chamblee, Georgia. From 1950 until the present time petitioner husband has been a practicing attorney at Huntsville, Alabama. In 1963 petitioners purchased a motel of approximately 25 units located in Huntsville and caused the property to be deeded to Barclay Motel, a corporation (hereinafter Barclay) all of the issued and outstanding stock of which has been owned by petitioners at all relevant times and during such times Marjorie B. Cloud has been President of Barclay and Earl E. Cloud has been its Secretary and Treasurer. On August 26, 1964 Barclay borrowed $315,000 to improve and enlarge the motel from the First American National Bank of Nashville, Tennessee and gave the bank its note for that amount. Petitioners became endorsers of this note under the following language: We, the undersigned endorsers of this note, jointly and severally, herewith and by virtue *191 of this endorsement, absolutely and unconditionally guarantee payment of the principal and interest of this note and of all other sums provided for in this note and/or the mortgage, and further waive any and all rights and claims of exemptions under the laws of the State of Alabama or the laws of the United States. WITNESS: Seal Earl E. Cloud [unreadable] Seal Marjorie B. Cloud The above note was secured by a mortgage of even date on the property owned by Barclay, including its lands, buildings, and certain personal property, which mortgage was signed by Marjorie B. Cloud as Barclay's President and attested by Earl E. Cloud as Barclay's Secretary-Treasurer but the petitioners did not sign the mortgage in their individual capacities nor did they own any of the covered property. On October 3, 1967 petitioner husband paid $1,500 of the interest then due on the note and petitioners claimed such amount as a deduction under section 163 on their 1967 income tax return. Barclay also claimed an interest paid deduction for this same $1,500 on its income tax return for its fiscal year ended February 28, 1968. In its books and records Barclay entered this item as interest *192 expense and as notes payable - stockholder. On December 28, 1967 petitioner husband paid the Madison County, Alabama realty taxes on Barclay's property in the amount of $3,739.20 and petitioners claimed such amount as a deduction for taxes under section 164 on their 1967 income tax return. Barclay also claimed an identical deduction for these taxes in its income tax return for its fiscal year ended February 28, 1968 and recorded the transaction in its books and records as taxes expense and as notes payable - stockholder. The record does not show that the $315,000 note hereinbefore described was ever in default and no foreclosure action was ever taken by the mortgagee. Barclay continued to operate its properties until 1971 at which time petitioners liquidated the corporation and they have continued to operate the properties as a proprietorship. OPINION Respondent has disallowed the interest deduction as a "duplicate" claim and as "payment made by you which [was] not your expense but that of Barclay Motel, Inc." and respondent has disallowed the claimed real estate tax deduction "since the taxes were paid by you on property belonging to another taxpayer, Barclay Motel, *193 Inc." Petitioners, though requested to do so, have favored us with no brief. From the entire record we ascertain that petitioner's positions and arguments are as follows: I In their petition petitioners assert that they are co-makers and endorsers of the subject promissory note and that they are co-makers and endorsers "from origination" under the provisions of Barclay's real estate mortgage. Suffice it to say, as to this argument that the facts are otherwise. Petitioners are endorsers of the note and no more and they have nowhere signed the mortgage in their individual capacities. In testifying on direct at page 16 of the transcript petitioner husband stated "This was purely and simply a loan on the real estate to be co-signed and repaid by the petitioners in the event that the motel could not pay it." This is clearly a statement of the secondary liability of an endorser rather than the primary liability of a co-signer and we conclude that petitioners have at all times had a clear understanding of the character of their liability. ON cross-examination petitioner husband was asked why petitioners paid interest and taxes when Barclay was the equitable owner of the *194 property and had the primary liability on the note. He answered "I paid whenever the corporation could not pay because I had made a commitment to the bank to lend me the money. The commitment even though it did not spell out in the mortgage and it was not proper to put in the mortgage all the terms of the negotiations, it was a moral commitment and as far as I was concerned it was a legal commitment and still is at this date." Respondent does not quarrel with the discharge by petitioners of what they felt to be their moral commitment but argues that in the circumstances of this case such payments were not deductible by the petitioners but were in fact either contributions to Barclay's capital or loans to Barclay so that its obligations could be discharged. We must agree with respondent's position. The obligations for interest and taxes here were those of Barclay and petitioners' liability was secondardy. Nelson v. Commissioner, 281 F.2d 1 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court; Acker v. Commissioner of Internal Revenue, 258 F.2d 568 (C.A. 6, 1958), affirming a Memorandum Opinion of this Court on this issue, cf., Putnam v. Commissioner of Internal Revenue, 352 U.S. 82 (1956). *195 II. At paragraph 5 F of their petition petitioners state that petitioner husband is a practicing attorney with a general practice and would suffer irreparable damage to such practice if these "operating" expenses here in issue were not paid. We have already held that the primary obligations in issue were those of Barclay. There is no evidence of default nor is there any attempt by petitioners to equate themselves with Barclay by lifting the corporate veil, and consequently this argument makes no sense. The expenses for interest and taxes here in issue were taken by petitioners' wholly owned corporation in its income tax return. They are properly deductible there and no place else. We can only look upon petitioners' attempt for double deductions as just that, and respondent's action in disallowing such deductions is sustained. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated section references are to the Internal Revenue Code of 1954, as amended. ↩
2. On their income tax return petitioners deducted $3,729.30 as the taxes that had been paid and this was the amount disallowed by respondent's determination. However the parties have now stipulated that this payment was actually $3,739.20. ↩